IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SY S.,[1]

              Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITTY
ADMINISTRATION,

              Defendant.

Case No. 6:22-cv-01934-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Sy S. brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405, and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.      PLAINTIFF'S APPLICATION**

Plaintiff was born in May 1955 and was sixty-four years old on October 11, 2019, his application date. (Tr. 53, 166-72.) Plaintiff has limited education and no past relevant work experience. (*Id.* at 49, 173, 181, 193.) In his application, Plaintiff alleged disability due to a club foot, "[a]neurisms on brain," heart problems, and "severe pain in right shoulder." (*Id.* at 53, 166-72, 180.)

///

PAGE 2 – OPINION AND ORDER

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 73-76, 87-95.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on January 19, 2022. (*Id.* at 24-51.) On February 8, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 12-23.) On October 18, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's

PAGE 3 – OPINION AND ORDER

residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante,* 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff was disabled. (Tr. at 12-23.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 11, 2019, the application date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffered from the following medically determinable impairments: "heart attack and club foot." (*Id.*) The ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments." (*Id.*) Accordingly, the ALJ did not proceed beyond step two of the sequential evaluation process, and concluded that Plaintiff was not disabled. (*Id.* at 20.)

### DISCUSSION

Plaintiff argues that the ALJ erred at step two by failing to find that he suffered from a severe impairment. (Pl.'s Opening Br. ("Pl.'s Br.") at 8-20, ECF No. 10.) Plaintiff further argues that the ALJ erred by discounting the medical opinion of consultative examiner Dr. Craig Davis ("Dr. Davis") as well as his own subjective symptom testimony, and by failing to develop the record to determine if he suffers from a mental disorder. (*Id.* at 10.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence, and therefore affirms the Commissioner's decision.

///

///

PAGE 4 – OPINION AND ORDER

I.      MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ erred by finding at step two that he does not suffer from a

severe impairment. (Pl.'s Br. at 8-20.) Plaintiff asserts that the ALJ based his finding in part on

an erroneous evaluation of Dr. Davis's medical opinion. (*Id.*) The Court disagrees.

A.      Applicable Law

As the parties acknowledge (*see* Pl.'s Br. at 16; Def.'s Br. at 5, ECF No. 14), the new

regulations apply here because Plaintiff filed his application after March 27, 2017.[2] *See Woods v.*

*Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a

claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the

new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons

standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at \*1 (9th Cir. 2022)

(explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's]

case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32

F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when

evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'"[3]

*Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent

---

[2] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024).

[3] The new and parallel regulations applicable to SSI claims are codified at 20 C.F.R. § 416.920c. *See Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at \*1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for disability insurance benefits and SSI (citing 20 C.F.R. § 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at \*1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for claims for disability insurance benefits and SSI are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)." *Id.* § 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant, specialization, and facts that tend to support or contradict a medical source's opinion. *Id.* § 404.1520c(c)(3)-(5).

PAGE 6 – OPINION AND ORDER

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

**B.    Analysis**

The Court finds that the ALJ did not commit harmful error in discounting Dr. Davis's opinion.

In August 2020, the Commissioner referred Plaintiff to Dr. Davis for a consultative physical examination. (Tr. 309.) At that appointment, Dr. Davis noted that Plaintiff presented in no acute distress. (*Id.* at 311.) He observed a regular heart rate and rhythm without murmurs, rubs, or gallop. (*Id.*) Plaintiff's lungs were clear to auscultation and percussion bilaterally. (*Id.* at 312.) Dr. Davis observed no wheezes, rales, and few rhonchi. (*Id.*) Plaintiff's right leg was shorter than his left. (*Id.*) He demonstrated 4/5 ankle plantar flexion and dorsi flexion strength on the right. (*Id.* at 313.) Sensory examination was normal to light touch throughout except in the right fingertips. (*Id.*) Plaintiff was able to lift, carry, and handle light objects. (*Id.*) He was able to squat and rise with ease. (*Id.*) He could walk on his heels and toes. (*Id.*) His tandem walking was normal. (*Id.*) He could pinch, grasp, and manipulate small and large objects without difficulty. (*Id.* at 314.) He demonstrated marked decreased range of motion of the right shoulder and decreased range of motion of the right ankle. (*Id.* at 314-16.) Based on those examination

PAGE 7 – OPINION AND ORDER

findings, Dr. Davis opined that Plaintiff could sit, stand, and walk for eight hours each in an eight-hour day; lift and carry forty pounds occasionally and ten pounds frequently; occasionally reach with the right arm; and frequently handle and feel. (*Id.* at 316.)

The ALJ found that Dr. Davis's opinion was "not persuasive because it is not supported by objective medical evidence or contemporaneous treatment records during the evaluative period." (Tr. 19.) The ALJ also noted that "Dr. Davis'[s] limitations are inconsistent with his own exam." (*Id.*, "For example, he reports no difficulty with pinching, grasping and manipulating objects, but finds limitations in handling and fingering. He opines a limitation in right upper extremity reaching based on his single examination, diagnosing 'frozen shoulder', despite the lack of any objective medical imaging."). The ALJ concluded that "Dr. Davis's physical examination is insufficient to establish a severe impairment in light of the lack of objective medical evidence or treatment records during the evaluative period." (*Id.*)

The ALJ did not err in discounting Dr. Davis's opinion as not supported by objective medical evidence. (*Id.*) An ALJ may discount a medical opinion on supportability grounds where there is a lack of objective medical evidence to support the opinion. *See Waldram v. Kijakazi*, No. 22-35893, 2023 WL 8433769, at *1-2 (9th Cir. Dec. 5, 2023) (finding that the ALJ did not err in discounting on supportability grounds a medical opinion that was inconsistent with "unremarkable" objective medical evidence); *see also* 20 C.F.R. § 416.920c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Here, there is no objective medical evidence in the record to support Dr. Davis's opinion regarding Plaintiff's limitations because Plaintiff never sought medical

PAGE 8 – OPINION AND ORDER

treatment for a "frozen shoulder" or for numbness in his fingers. On the contrary, Plaintiff reported to Dr. Davis that his right shoulder symptoms are relieved by praying. (Tr. 310.) Further, there is no medical imaging to support Dr. Davis's opinion because Plaintiff refused to attend an imaging appointment following Dr. Davis's examination. (*See* Tr. 56, "[Claimant] states he is not willing to do the XR's . . . Asked last time he had any imaging done and of what. Clmnt notes over ten years ago and not sure what it was or where it was but absolutely refuses to do anymore. Explained that without the imaging will need to make a decision with the evidence in file which could likely result in a denial. Clmnt states he understands does not care we can make a decision with the evidence in file it does not matter to him and he hung up."). Thus, the only medical evidence to support Dr. Davis's opinion regarding Plaintiff's limitations was a decreased range of motion in Plaintiff's shoulder that Dr. Davis observed during the examination. (Tr. 314-16.) In the absence of any other objective medical evidence or imaging, the ALJ did not err in discounting Dr. Davis's opinion as unsupported by objective medical evidence, and substantial evidence in the record supports the ALJ's conclusion.

The ALJ also discounted Dr. Davis's opinion based on a lack of contemporaneous treatment. (Tr. 19.) A lack of contemporaneous treatment is another valid reason to discount a medical opinion on supportability grounds. *See, e.g.*, *Steirer v. Kijakazi*, No. 22-16792, 2023 WL 6999450, at *1 (9th Cir. Oct. 24, 2023) ("The ALJ did not err. The ALJ evaluated the consistency and supportability of the opinions by weighing each against objective clinical findings, . . . and her history of conservative treatment." (citing 20 C.F.R. § 416.920c(a))). Here, Plaintiff did not seek any medical treatment for his alleged impairments during the relevant time period, but instead relied on prayer. (Tr. 35, "And when I get sick, I just pray about it. And then, you know, usually I get better. But sometimes, you know, it takes three or four months and then

PAGE 9 – OPINION AND ORDER

I'll be better, you know. Sometimes it don't take that long."; Tr. 309-10, noting that Plaintiff

treats his history of aneurysm, back pain, and shoulder issues "by praying"). The ALJ did not err

in discounting Dr. Davis's opinion regarding Plaintiff's limitations in light of Plaintiff's lack of

treatment, and the ALJ's conclusion is supported by substantial evidence. *Cf. Bagdasaryan v.*

*Saul*, 787 F. App'x 423, 424 (9th Cir. 2019) ("The ALJ provided specific and legitimate reasons

to reject [a medical] opinion on [the claimant]'s physical functioning as unsupported by the

record and inconsistent with . . . conservative treatment[.]" (citing *Trevizo v. Berryhill*, 871 F.3d

664, 675 (9th Cir. 2017))).

Finally, the ALJ appropriately discounted the limitations in Dr. Davis's opinion as

"inconsistent with his own exam." (Tr. 19.) An ALJ may discount a medical opinion on

supportability and consistency grounds where the opinion is inconsistent with the provider's own

examination. *See, e.g., Waldram*, 2023 WL 8433769, at *1 ("[S]ubstantial evidence supports the

ALJ's determination that the relevant objective medical evidence from [the doctor's]

examination did not support his proposed . . . limitations." (citing *Woods*, 32 F.4th at 791-92)).

Here, substantial evidence in the record supports the ALJ's analysis that Dr. Davis did not

observe Plaintiff having difficulty with pinching, grasping, or manipulating objects, but proffered

limitations in handling and fingering. Further, Dr. Davis included a reaching limitation in

Plaintiff's right upper extremity "based on his single examination" and "diagnosed 'frozen

shoulder', despite the lack of any objective medical imaging." (Tr. 19.) The ALJ did not err in

discounting Dr. Davis's opinion on this ground. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir.

2020) (finding that a conflict between a physician's medical opinion on the claimant's

manipulative limitations and his own notes reflecting unremarkable findings was a legally

sufficient basis for discounting the medical opinion) (citation omitted).

For these reasons, the ALJ did not err in discounting Dr. Davis's medical opinion, and the ALJ's opinion was supported by substantial evidence.

## II.     STEP TWO FINDING

Plaintiff argues that the ALJ erred at step two by failing to conclude that any of his medically determinable impairments were severe. (Pl.'s Br. at 8-10.) Although Plaintiff does not appear to assert that either his prior heart attack or club foot are severe impairments standing alone, he argues that the ALJ should have found that the combination of Plaintiff's medically determinable impairments significantly impacts his ability to do basic work activities. (*Id.* at 10.)

### A.     Applicable Law

The Social Security Act provides that a medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 416.921 ("The "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*; *see also* Social Security Ruling ("SSR") 85-28, *available at* 1985 WL 56856, at *4 ("At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

Step two proceeds in two steps. First, the ALJ "establish[es] that [the claimant has] a medically determinable impairment(s)," and then the ALJ must "determine whether [the claimant's] impairment(s) is severe." *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(ii) (noting that at

PAGE 11 – OPINION AND ORDER

the second step of the sequential evaluation process, "we consider the medical severity of your impairment(s)"). The ALJ may find that an impairment is not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, *available at* 1985 WL 56856, at *3; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (noting that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))). "Medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." SSR 85-28, *available at* 1985 WL 56856, at *4.

"If [the claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, [the Commissioner] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(ii); *see also* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); SSR 85-28, *available at* 1985 WL 56856, at *3 ("Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilit(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.").

## B.      Analysis

The ALJ did not err by finding at step two that Plaintiff does not suffer from any severe medically determinable impairments. (Tr. 17.)

///

PAGE 12 – OPINION AND ORDER

Plaintiff has the burden of presenting evidence sufficient to establish a "severe" impairment. *See* 20 C.F.R. § 416.920(c); *see also Judith Y. v. Saul*, No. CV 19-5498-SP, 2020 WL 7024949, at *6 (C.D. Cal. Nov. 30, 2020) ("[T]he mere diagnosis of an impairment does not establish that it was severe." (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999))). To satisfy step two's severity requirement, Plaintiff must prove that his medically determinable impairments, either alone or in combination, "[s]ignificantly limit [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). As noted, the claimant's impairments must last, or be expected to last, for at least 12 consecutive months. *See* 20 C.F.R. § 416.905.

Plaintiff did not submit medical evidence demonstrating that any of his impairments, alone or in combination, significantly limited his ability to do basic work activities for at least twelve consecutive months. Although Plaintiff relies in large part on Dr. Davis's consultative examination findings, Dr. Davis did not offer any diagnosis of a medically determinable impairment nor any opinion that would satisfy the durational requirement. (*See* Tr. 309-17; *see also* Tr. 19, "Dr. Davis did not identify severe impairments" but rather "provide[d] functional limitations based on his physical examination.") Nor does Plaintiff point to any other medical evidence in the record to satisfy the durational requirement. (*See generally* Pl.'s Br. at 1-20; Pl.'s Reply Br. at 1-5, ECF No. 15.)

As noted above, Plaintiff bears the burden of proving that an impairment was severe, but here Plaintiff failed to present any medical opinion or evidence that his prior heart attack would more than minimally impact his ability to perform work activity for a period of twelve months. In fact, Plaintiff testified at the hearing that his heart condition does not restrict his ability to work. (Tr. 35-36.) Nor does Plaintiff point to any evidence that his club foot significantly limits his ability to do basic work activities. Accordingly, Plaintiff has failed to meet his burden of

PAGE 13 – OPINION AND ORDER

demonstrating that his medically determinable impairments are severe, and the Court finds that the ALJ did not err at step two. *See Bagdasaryan*, 787 F. App'x at 424 (holding that substantial evidence supported the ALJ's step two determination that the claimant's impairment was not severe); *Verduzco*, 188 F.3d at 1089 ("None of the appellant's treating or examining physicians ever indicated that the appellant was disabled. Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Key v. Heckler,* 754 F.2d 1545, 1549-50 (9th Cir. 1985) ("The ALJ, after considering all the evidence regarding his physical condition, concluded that [the claimant] did not have a severe disability and could perform basic work-related activities. The medical evidence presented perhaps would permit a reasonable mind to make a finding of disability. It also would permit a finding of no disability. When there is evidence sufficient to support either outcome, we must affirm the decision actually made.") (citation omitted); *see also Tyrone L. v. Saul*, No. 18-cv-04575-TSH, 2019 WL 4417632, at *11 (N.D. Cal. Sept. 16, 2019) (finding that "the ALJ did not err in finding [the plaintiff's disorders] are not severe impairments" where "the ALJ found no evidence to show that [post-traumatic stress disorder] affected Plaintiff for a continuous period of at least 12 months, as required to show a severe impairment" and "[t]he ALJ also considered Plaintiff's allegations of learning disorder and neurocognitive impairment, . . . and found that there was no diagnosis by a treating clinician and no treatment for cognitive impairment"); *Gould v. Astrue*, No. 09-1402-AA, 2011 WL 130163, at *2 (D. Or. Jan. 14, 2011) ("[T]he ALJ committed no error in finding that the medical evidence did not establish 'severe' impairments. No treating or examining physician has indicated or reported symptoms or limitations that would last twelve months and more than minimally affect plaintiff's ability to perform work activity."); *Taylor v. Astrue*, No. 08-0230-AA, 2009 WL 10690945, at *4 (D. Or.

PAGE 14 – OPINION AND ORDER

Mar. 25, 2009) ("Based on the lack of adequate objective medical evidence and the claimant's improvement, the ALJ found at step two that claimant's impairments are non-severe. I agree. Furthermore, I find claimant's failure to meet her initial burden of proving her disability justifies the denial of benefits.").

## III.  PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff also argues that the ALJ erred by disregarding his symptom testimony. (Pl.'s Br. at 10-15.) Specifically, Plaintiff highlights testimony that his daily activities and work are limited because his arms, knees, back, and head hurt, he has numbness in his right hand, he must walk slowly and has difficulty using stairs, and has difficulty lifting his right arm above his chest. (*Id.* at 12-13.) However, in light of the ALJ's conclusion that Plaintiff did not suffer from a severe impairment related to any of these symptom allegations, it was appropriate for the ALJ to end the sequential evaluation process at step two. *See* 20 C.F.R. § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."); SSR 85-28, *available at* 1985 WL 56856, at *4 ("At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."); *see also Verduzco*, 188 F.3d at 1090 (finding no error where the ALJ did not proceed beyond step two after finding that the claimant's impairments were not severe).

## IV.  DEVELOPMENT OF THE RECORD

Plaintiff also argues that the ALJ erred by not seeking a further consultative examination to determine if Plaintiff suffered from any mental impairments. (Pl.'s Br. at 19-20.) The Court disagrees.

///

PAGE 15 – OPINION AND ORDER

Although an ALJ "has an independent duty to fully and fairly develop the record,"
*Smolen*, 80 F.3d at 1288, this duty is only triggered by ambiguous evidence or the ALJ's own
finding that the record is inadequate to allow for proper evaluation of the evidence. *See*
*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's
own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers
the ALJ's duty to 'conduct an appropriate inquiry.'" (quoting *Smolen*, 80 F.3d at 1288 and citing
*Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998))).

Here, there was no ambiguous evidence in the record that triggered the ALJ's duty
further to develop the record with respect to Plaintiff's mental impairments. Plaintiff points to
one manic episode in 2018 in which he presented to an emergency room, but there is no other
evidence in the record suggesting that Plaintiff suffered from a mental impairment.[4] Notably,
Plaintiff did not allege disability based on any mental impairment (Tr. 180), he submitted no
medical evidence or records reflecting a mental impairment other than the one emergency room
visit in 2018, and he did not testify about any mental impairments. On this record, the ALJ did
not have a duty to seek a further consultative examination.[5] *See Mayes v. Massanari*, 276 F.3d

---

[4] The emergency room physician diagnosed "Manic episode, unspecified, Brief psychotic
disorder, Unspecified mood [affective] disorder." (Tr. 299.) However, Plaintiff also tested
positive for benzodiazepine and marijuana during the emergency room visit (*see id.* at 306), and
the record reflects that Plaintiff acknowledged recreational drug use. (*Id.* at 238, 311.) The
limited medical evidence in the record also reflects that Plaintiff's mood was normal at every
other medical appointment. (*See id.* at 239, September 2010, "The patient has adequate mood
and affect"; *id.* at 273, December 2010, "The patient's mood is appropriate. The thought process
is rational, coherent and organized. The patient is having normal perceptions"; *id.* at 312, August
2020, Dr. Davis noted "appropriate" mood.)

[5] The agency did order a consultative examination with Dr. Davis to supplement the
sparse record of any physical limitations. (Tr. at 309-17.) When the agency attempted to order a
follow-up exam for imaging, Plaintiff twice refused. (*See id.* at 56, when "explained [to Plaintiff]
that without the imaging will need to make a decision with the evidence in file . . . [,]" Plaintiff
responded he "does not care we can make a decision with the evidence in file"; *id.* at 66, when

453, 459-60 (9th Cir. 2001) (holding that the ALJ "had no duty to develop the record by diagnosing [claimant's] herniated discs" where the claimant "did not provide the ALJ with any medical evidence indicating that she had herniated discs until after the ALJ hearing"); *Smolen,* 80 F.3d at 1288 (holding that the ALJ has no duty to develop the record if no medical evidence indicates that such an impairment might exist); *see also Thornton v. Astrue,* No. 09-cv-0138, 2010 WL 1904661, at *6 (E.D. Wash. May 12, 2010) (finding that the plaintiff's "unsupported testimony" was insufficient to trigger the ALJ's duty to develop the record regarding an alleged mental impairment where "acceptable medical sources made no mental health diagnoses").

For these reasons, the ALJ did not err by failing further to develop the record with a consultative examination to evaluate Plaintiff's mental health.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 21st day of May, 2024.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

asked again about another consultative examination "to assess his severity," Plaintiff responded "[h]e wishes for his claim to be determined with what is in file").